EDITH H. JONES, Circuit Judge.
 

 This appeal arises from a partial summary judgment for the sum of $1,228,279.94 plus post-judgment interest and attorneys’ fees entered in the Eastern District of Louisiana against Mr. and Mrs. Dedeker, Mr. and Mrs. Logan and P.T. Bailey, Inc. (“Appellants”) and in favor of GATX Third Aircraft Corporation (“GATX”). Believing as we do and as the following discussion will indicate that the district court properly entered a summary judgment upholding the liability of the Appellants on their guarantee in favor of GATX, we affirm the judgment.
 

 T
 

 Factual Summary
 

 On December 26, 1978, P.T. Bailey, Inc. executed, as charterer, a bare-boat charter party with GATX for the offshore ocean supply vessel
 
 P.T. BAILEY,
 
 subsequently renamed the
 
 COURTNEY LEIGH.
 
 The Appellants and Mr. and Mrs. Charles R. Briley, Mr. and Mrs. Charles Lugenbuhl and Mr. and Mrs. Floyd Naquin executed concurrently a Continuing Guaranty Agreement (the “Guaranty”) on behalf of GATX up to the limit of $2,656,000. The Guaranty stated in pertinent part that each of the guarantors would be
 

 1. ... bound hereby
 
 in solido
 
 with each other and with Bailey for all of said indebtedness and/or obligations precisely as if the same had been contracted and were due and owing personally by the Guarantors, and the Guarantors, waiving all pleas of division and discussion, agree to pay to [GATX] upon demand, at any time, the full amount due by Bailey to [GATX], up to the aforesaid amount of this Continuing Guaranty....
 

 4. This Continuing Guaranty shall be construed as an unconditional, absolute, continuing, and unlimited guarantee. Guarantors specifically agree that [GATX] may, at its option, proceed in the first instance against the Guarantors to collect any obligation covered by this Continuing Guaranty without first proceeding against Bailey, any other person, firm or corporation or against the vessel subject to the Charter. [GATX] shall also have, and Guarantors hereby confirm, the right and privilege of [GATX] to release at any time or times any one or more of the Guarantors from his or her obligations hereunder without in any way discharging or releasing any other Guarantor or Guarantors hereunder.
 

 
 *714
 
 Bailey defaulted in its quarterly payments of charter hire from and after March 28, 1983. GATX consequently terminated the bare-boat charter party on August 8 of that year and instituted a suit to arrest the vessel. Claims for recovery against the corporate and all of the individual guarantors were joined. In February, 1984, Charles Briley and his wife filed a Chapter 11 bankruptcy petition in the Western District of Louisiana. Shortly thereafter, GATX settled with Mr. and Mrs. Lugen-buhl for $204,400, and with Mr. and Mrs. Naquin for $321,200. Partial Summary Judgment against the Appellants was rendered in September, 1984.
 

 II.
 

 Legal Discussion
 

 Appellants contend that there were genuine issues of material fact which preclude summary judgment; that the automatic stay in force as a result of the bankruptcy of Mr. and Mrs. Briley should protect Appellants as well; and that the district court did not properly apportion the contract liability in accord with Louisiana law.
 

 A. Whether there were genuine issues of material facts.
 

 The district court may appropriately render summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In reviewing the district court decision, the court of appeals applies the same standard,
 
 John v. State of Louisiana,
 
 757 F.2d 698, 708 (5th Cir.1985), quoting
 
 United States Steel Corp. v. Darby,
 
 516 F.2d 961, 963 (5th Cir.1975);
 
 Transource Int’l. v. Trinity Ind.,
 
 725 F.2d 274, 279 (5th Cir.1984), viewing the record and inferences from the facts in the light most favorable to the nonmovant,
 
 Poller v. Columbia Broadcasting System, Inc.,
 
 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962);
 
 Walters v. City of Ocean Springs,
 
 626 F.2d 1317 (5th Cir.1980). Appellants assert that genuine issues of material fact existed concerning both the amount owed under the Guaranty and the
 
 bona fides
 
 of GATX’s conduct in collecting it.
 

 (1) In support of its motion for partial summary judgment, GATX presented to the trial court an affidavit of one of its executives with a five-page explanation and itemization of the amounts sought against Appellants under the Guaranty commencing with the March, 1983 payment. Appellants do not contest the complex and sophisticated interest or stipulated loss value calculations made by GATX, but rather assert that they were not given credit for March and June charter hire payments due on the vessel. Appellants’ brief admits, however, that “P.T. Bailey, Inc. failed to make timely payments under the GATX lease .... ” Furthermore, GATX did, in fact, provide a credit for the March and June charter hire payments based upon GATX’s collection of an irrevocable letter of credit that constituted further security for the obligations.
 

 It is thus apparent that in support of their motion for summary judgment, GATX has provided figures of debit and credit that are specific, thorough, and fully itemized. Appellants respond with nothing comparable, resting instead on the vague averment that they were not given sufficient credit. This situation is like that found in
 
 Golden Oil Company, Inc. v. Exxon Company USA,
 
 543 F.2d 548, 551 (5th Cir.1977), where we said,
 

 [T]his Court squarely held in
 
 Olympic Insurance Company v. H.D. Harrison, Inc.
 
 418 F.2d 669 (5th Cir.1969), that Summary Judgment on an account is proper where the moving party sets out a detailed statement of account and the opposing party fails to adduce specific, legally cognizable items of debt or credit not included in the movant’s statement, demonstrating that the account claimed due is inaccurate. Likewise
 
 Lawhorn v. Atlantic Refining Company,
 
 299 F.2d 353 (5th Cir.1962) affirms Summary
 
 *715
 
 Judgment on an open account where the movant demonstrated accuracy and validity of the account by Affidavit and the opposing party denied liability generally without presenting specific indications that the movant’s facts erred. These two cases control the situation before us now, demonstrating past doubt that this Court will affirm Summary Judgment granted on an account, pleaded in adequate detail, where there is no dispute of fact.
 

 Appellants have not adduced specific, legally cognizable items of debt or credit not included in the movant’s statement or presented specific indications that movant’s facts erred. We therefore agree with the district court that no genuine issue of material fact remains.
 

 (ii) Appellants’ allegations of malfeasance on the part of GATX, leading to some type of breach of the Guaranty or fraud, are likewise insufficiently specific.
 
 [1]
 

 Affidavits submitted by two Appellants suggest that a vice-president of GATX at the time of the execution of the charter party subsequently obtained a small ownership interest in a company affiliated with P.T. Bailey, Inc., and that Mr. Briley, then President of P.T. Bailey, Inc., diverted funds from P.T. Bailey into accounts of other companies including the one in which the GATX vice-president may have owned an interest. Appellants’ affidavits do not allege that GATX knew of, participated in, advised about, controlled, or benefitted from the alleged diversions. They do not even allege that the man in question was still an officer of GATX when the alleged diversions occurred or that he had anything to do with the diversions. Appellants did not undertake any discovery to investigate their charges during the one year that elapsed between the commencement of this suit and the partial summary judgment. They failed even to initiate discovery until shortly before the hearing on the summary judgment motion. Viewed in the light most favorable to the Appellants, the allegations amount to little more than rumors which fail to raise an issue of fact that is both genuine and material. Even if material,
 
 Houston North Hospital Properties v. Telco Leasing, Inc.,
 
 688 F.2d 408, 410 (5th Cir.1982), the issue is not genuine because there is not “sufficient evidence supporting the claimed factual dispute ... to require a jury or judge to resolve the parties’ differing versions of the truth at trial.”
 
 First National Bank of Arizona v. Cities Service Co.,
 
 391 U.S. 253, 289, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968). Appellants have neither adduced evidence nor indicated that evidence would be forthcoming sufficient to require the fact finder to decide between differing versions of the truth. We therefore find that with respect to this claim, too, summary judgment was proper.
 

 B. Applicability of the Automatic Stay.
 

 Appellants try to take advantage in two ways of the automatic stay in bankruptcy, 11 U.S.C. § 362(a), which arose to protect Mr. and Mrs. Briley upon their filing of a petition for reorganization under Chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 1101
 
 et seq.
 
 (1978). First, they suggest that GATX was required to sever Mr. and Mrs. Briley at the trial court level in order not to violate the automatic stay. Second, they assert that their claims for fraud against Briley are so intertwined with their liability to GATX that it is inequitable to render judgment against the Guarantors at
 
 *716
 
 this time. Whether Appellants raise the second assertion as a defense to their obligation or simply as ground for a stay of litigation against them is uncertain. In any event both of these assertions lack merit and border on frivolousness.
 

 This court made clear the limited scope of the automatic stay in bankruptcy proceedings in
 
 Wedgeworth v. Fibreboard Corporation,
 
 706 F.2d 541 (5th Cir.1983). The automatic stay takes effect under 11 U.S.C. § 362(a)(1) upon the filing of a petition in bankruptcy and acts to stay any judicial “proceeding against the debtor.” Its purposes are to protect the debtor's assets, provide temporary relief from creditors, and further equity of distribution among the creditors by forestalling a race to the courthouse. See
 
 Wedgeworth,
 
 706 F.2d at 544. By its terms the automatic stay applies only to the debtor, not to co-debtors under Chapter 7 or Chapter 11 of the Bankruptcy Code
 
 [2]
 
 nor to co-tort-feasors. This court in
 
 Wedgeworth
 
 thus refused to enforce the automatic stay for the benefit of alleged co-tortfeasors of two bankrupt companies, Johns-Manville Corporation and UNR Industries, Inc., in the ongoing asbestos personal injury litigation. Nothing was said in that decision about the necessity of severance of a debtor from litigation which was pending against it at the date of bankruptcy, as Appellants contend. Rather, the court held that while the stay protects the debtor who has filed a bankruptcy petition, litigation can proceed against other co-defendants.
 

 Appellants miss the point of the only other case cited in their favor,
 
 Federal Life Insurance Co. of Texas v. First Financial Group of Texas,
 
 3 B.R. 375 (S.D.Tex.1980), suggesting that it requires application of the bankruptcy automatic stay to “all judicial proceedings against the debtor in bankruptcy and his co-defendants when allegations against them arise from the same factual and legal basis.” If this were the case, the
 
 First Financial
 
 decision would have been overruled
 
 sub silentio
 
 by
 
 Wedgeworth.
 
 However, the court in
 
 First Financial
 
 actually held that the automatic stay prevented a plaintiff from pursuing its fraud claim against a bankrupt corporate defendant and that, because the allegations raised against co-defendants who were principals of the debtor were “inextricably interwoven” with claims against the debt- or, the court would decline to permit plaintiff to sever the co-defendants (pursuant to Fed.R.Civ.P. 21 or 42(b)) and proceed separately against them. There is absolutely no suggestion in
 
 First Financial
 
 that the automatic stay in bankruptcy compelled a stay of the action against the co-defendants.
 

 Appellants additionally assert that the case against them should not proceed because of the Brileys’ bankruptcy, which diminishes the likelihood that Appellants can enforce or recover upon cross-claims for fraud. If Appellants are in fact requesting a discretionary stay of the action pending unspecified developments in the Brileys’ bankruptcy case, that request was inferentially denied by the district court and we find nothing to indicate that the district court abused its discretion.
 
 Wedgeworth,
 
 706 F.2d at 545, citing
 
 Landis v. North American Can Co.,
 
 299 U.S. 248, 254-55, 57 S.Ct. 163, 165-66, 81 L.Ed. 153 (1936). A stay can be justified only if, based on a balancing of the parties’ interests, there is a clear inequity to the suppliant who is required to defend while another action remains unresolved and if the order granting a stay can be framed to contain reasonable limits on its duration.
 
 Id.
 
 Appellants have not satisfied these criteria. They argue that they have been prevented from instituting a cross-claim for fraud against Mr. Briley because of his status as a debtor (Appellants’ brief at 13), yet several remedies were available under the Bankruptcy Code to Appellants, including filing a proof of claim, 11 U.S.C. § 501(a); filing a complaint to avoid discharge, 11 U.S.C. §§ 727, 1141(d)(3) or the dischargeability of a debt, 11 U.S.C. § 523; and filing a motion
 
 *717
 
 for relief from stay, 11 U.S.C. § 362(d), to permit them to liquidate their claim against Briley and pursue any offset against GATX therefrom in the present case. Appellants obviously did not employ the last enumerated remedy, and it is unclear whether they availed themselves of the other bankruptcy procedures. Of course, they basically complain that the Brileys’ wherewithal, because of bankruptcy, will not be available to relieve Appellants of their obligations to GATX under the Guaranty, a situation stemming directly from the broad provisions of the contract of guaranty which they voluntarily executed. The inequity, if any, of GATX’s obtaining the instant judgment against Appellants derives largely from Appellants’ investment decision that turned sour. To prevent or delay GATX from enforcing its rights in a situation foreseen by it and contractually provided for with each guarantor would be, under these circumstances, legally inequitable. Moreover, if a discretionary stay were predicated solely upon the pendency of the Brileys’ bankruptcy, there is no indication of its likely duration or of any reasonable date of termination. There was no abuse of discretion in the district court’s denial of a stay.
 

 C. Whether Louisiana law forbids enforcement of the full guarantee liability against Appellants.
 

 Appellants’ final line of defense relies upon Louisiana law concerning
 
 in soli-do
 
 liability. According to Appellants,
 
 Harvey v. Travelers Insurance Company,
 
 163 So.2d 915 (La.App. 3rd Cir.1964), correctly stated Louisiana law as entitling the Appellants to an offset equal to the virile share of each of the Guarantors who settled with GATX, and possibly two additional virile offsets based on the obligations of the bankrupt Brileys. It should be noted that it is unclear whether Appellants ever raised this specific issue in the trial court. The closest approach is found in Appellants’ general denial that they owed the amount of money GATX claimed. Summary judgment can not be attacked on appeal by raising issues that were not before the district court or by introducing new materials into the record on appeal.
 
 John v. State of Louisiana, 151
 
 F.2d 698, 710 (5th Cir.1985);
 
 Volkswagen of America, Inc. v. Robertson,
 
 713 F.2d 1151, 1162 (5th Cir.1983). Even if properly raised below, however, the
 
 Harvey
 
 case, unfortunately for Appellants, is not the last word on this matter in Louisiana law.
 

 The holding of
 
 Harvey
 
 has been clarified by the Louisiana Supreme Court in
 
 First National Bank of Crowley v. Green Garden Processing Company, Inc.,
 
 387 So.2d 1070 (La.1980), which held succinctly that the liability of co-debtors or guarantors under the Louisiana Civil Code could be altered by the terms of a written contract with the beneficiary of the guarantee. The state supreme court explained,
 

 [Wjhere the contract is silent, we may look to the provisions of the civil code governing the contract of suretyship to resolve differences between the parties. Where, however, the contract is not silent, the parties are bound by its contents, as agreements legally entered into have the effect of laws on those who have formed them. La.Civ.Code Art. 1901.
 
 Id.
 
 at 1073.
 

 The facts in
 
 Green Garden
 
 are indistinguishable from those before us.
 

 The Continuing Guaranty which had been entered into by three obligors to the First National Bank of Crowley stated, in pertinent part:
 

 The Bank may, one or more times in its judgment ... grant releases and discharges generally, make changes of any sort whatever in the terms of the contract ... with other parties and securities ... without notice to the undersigned, such notice being hereby specifically waived .... The Bank shall not be bound to exhaust its recourse against the debtor or other persons or upon the securities it may hold before being entitled to payment from the undersigned of the amount hereby guaranteed. I do furthermore bind and obligate myself, ... in solido with said debtoi, for payment of the said indebtedness precisely as if the
 
 *718
 
 same had been contracted and was due or owing by me in person, ... to pay to said Bank, ... the full amount of said indebtedness up to the amount of this guaranty, plus all interest, attorney fees, other fees, and charges, as above set forth....
 

 IN THE EVENT this Continuing Guaranty is executed by more than one individual, it is understood and agreed that each individual shall be bound by all of the provisions of this continuing guaranty and for the payment in full of the entire amount stated above, plus all interest, attorney fees, other fees, and charges of whatever nature and kind in the same manner as if each individual were the only person executing this continuing guaranty.
 

 The First National Bank of Crowley successfully enforced this language to obtain a judgment against one of three guarantors for the total remaining deficiency on a debt, even where the second guarantor had previously settled with the bank and the third had been discharged in bankruptcy. The Louisiana Supreme Court made no reference to any possibility of a
 
 pro tanto
 
 reduction of liability based upon the bankruptcy or settlement of the other guarantors. On the contrary, it held unequivocally that the liability of any guarantor extends to the whole of the obligation being guaranteed if the contract between the parties so provides.
 
 [3]
 
 Although this decision of the Louisiana Supreme Court has been criticized, see Note,
 
 Green Garden: Short Shrift for the Solidary Surety,
 
 41 La.L. Rev. 968 (1981), it remains the controlling authority in the State of Louisiana, and we are bound to follow it.
 

 The Guaranty executed by Appellants to GATX in fact reaches further than the guarantee in
 
 Green Garden.
 
 The operative language, quoted at the outset of this opinion, confirms that GATX retains the “right and privilege ... to release at any time or times any one or more of the Guarantors from his or her obligations hereunder without in any way discharging or releasing any other Guarantor or Guarantors hereunder.”
 

 For the foregoing reasons, this court concludes that the judgment of the district court be AFFIRMED.
 

 [1]
 

 . It appears that the trial court granted a Motion to Strike the affidavits on which this portion of Appellants' defense was based. GATX had moved to strike one set of affidavits for non-compliance with Fed.R.Civ.P. 56(e) because,
 
 inter alia,
 
 of their failure affirmatively to establish the affiants' competence or personal knowledge concerning the matters to which they testified. Appellants submitted two amended affidavits by the same affiants. Trial Rec. at 244. The court’s docket entry recites that the Motion to Strike was granted, without specifying whether its ruling pertained to the original affidavits, the amended affidavits, or both sets. We do not necessarily disagree with the trial court’s ruling as applied to any of the affidavits, see
 
 Londrigan v. Fed. Bureau of Investigation,
 
 670 F.2d 1164 (D.C.Cir.1981), but we prefer to address the sufficiency of the affidavits on a less murky procedural record.
 

 [2]
 

 . A co-debtor stay does apply in certain limited circumstances, when the debtor's case is pending as a Chapter 13 bankruptcy. 11 U.S.C. § 1301(a).
 

 [3]
 

 . La.Civil Code § 1803 (eff. January 1, 1985) now stipulates the same result even if the contract does
 
 not
 
 so provide.